UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUSSEAU FARMS LCC,

    Plaintiff,

Case No. 12-12581
HON. GERSHWIN A. DRAIN

vs.

WILBUR-ELLIS COMPANY,

    Defendant.

_____/

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#24]

**I.    INTRODUCTION**

Presently before the Court is Defendant's Motion for Summary Judgment filed on May 31, 2013. Plaintiff failed to file a Response in the time allowed under Local Rule 7.1(e). Defendant filed a Motion on July 2, 2013 to preclude Plaintiff from responding, which this Court granted. Plaintiff filed a Motion for Relief from the Order on July 10, 2013, which this Court denied. Even if Plaintiff were allowed to respond, it would not change the outcome of the case. Based on Defendant's brief, it is apparent that summary judgment must be GRANTED.

**II.    PROCEDURAL AND FACTUAL HISTORY**

Plaintiff, Dusseau Farms, LCC, is a commercial farm located in Lenawee County, Michigan. It is owned and operated by Randy, Scott, and Michael Dusseau. Defendant, Wilbur-Ellis Company, is a distributor of agricultural products, including chemicals that farmers use on their crops. In July 2011, Defendant's representative, Ryan Robinson, recommended that

1

Plaintiff spray four chemicals in combination onto its banana pepper crop. These chemicals were copper, Acephate, Quadris, and R56. Plaintiff chose to utilize the recommendation and placed an order with Defendant.

Once Plaintiff placed the order, Defendant delivered the products. A delivery tag accompanied the chemicals, which was signed by a representative of Plaintiff. Defendant also sent monthly invoices to Plaintiff. This process of ordering chemicals – with a recommendation, an order slip, a delivery tag, and an invoice – is Defendant's standard business practice and has been utilized with Plaintiff on numerous occasions for many years, with the standard language on the forms unchanged.

After the four chemicals were delivered, Mike Dusseau used a tank sprayer to apply the mixture to the banana pepper crop. He refilled the sprayer's tank three times to spray the banana peppers with the mixture. Each tank sprayed a distinct area, and the three areas did not overlap. The first two areas sprayed produced a normal growth and yield of banana pepper crop, though with some mild distortion and scorching on the foliage. The crop in the third area became burned and damaged. According to Scott Dusseau, the first two tanks did not cause any harm to the banana pepper crop. However, Scott Dusseau and his brothers deny that they did anything different with the third tank that resulted in the harm to the third area of the crop.

Scott Dusseau does not claim that any of the chemicals individually caused the damage, but speculates that the four chemicals mixed together became toxic at a certain temperature and humidity. Scott Dusseau bases this hypothesis on what Mary Hausbeck from Michigan State University allegedly told him. A diagnostic report from Michigan State University states that "the possibility of a phytotoxicity caused by the components in the tank mix cannot be discounted." However, it remains inconclusive, stating that "the observation that the damage to

2

the crop became more severe as subsequent tank loads were applied is somewhat difficult to explain." During deposition, Randy Dusseau, who Plaintiff disclosed in its witness list as an expert regarding the use of pesticides, herbicides, and fertilizer, conceded that he doesn't know why the banana pepper crop was damaged.

### III. LAW AND ANALYSIS

    1. **Standard of Review**

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment where there is no genuine issue of material fact and moving party is entitled to judgment as a matter of law. This is not a disfavored procedural shortcut, as the Supreme Court has affirmed the court's use of summary judgment as an integral part of the system. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 270 (1968). A mere scintilla of evidence supporting the non-moving party is insufficient and will not meet this burden. *Anderson*, 477 U.S. at 252.

    2. **Warranties**

In Count 1 of the Complaint, Plaintiff alleges that "Defendants [*sic*] breached their implied warranty, pursuant to MICH. COMP. LAWS § 440.2314, and expressed warranty of merchantability by selling the product that was not merchantable or did not meet industry standards." In Count 2, Plaintiff alleges that Defendant breached the express and implied warranty of fitness "pursuant to MICH. COMP. LAWS § 440.2313," as "Defendant warranted that the product sold to Plaintiff was suitable to be used to protect Plaintiff's pepper crop from damage."

Under MICH. COMP. LAWS § 440.2314, "warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." However, implied warranties may be excluded or modified if the seller meets certain requirements. MICH. COMP. LAWS § 440.2316(2) states:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof.

A disclaimer is conspicuous when it is "written, displayed, or presented [so] that a reasonable person against which it is to operate ought to have noticed it." MICH. COMP. LAWS § 440.1201(j). Whether a term or clause is "conspicuous" or not is decided by the court. *Id.*

Defendant provided Plaintiff with several written documents that excluded the implied warranties of merchantability and fitness for a particular purpose. The recommendation report for the four chemicals contained the following "Recommendation Disclaimer," which is on the front page, double-spaced, and in all capitals:

> **NOTICE TO CUSTOMER**: ON ACCOUNT OF THE INHERENT NATURE OF *ALL* SPRAYS, VARYING SOILS, TREE AND WEATHER CONDITIONS, THE TIME AND MANNER OF ANY KIND OF APPLICATION, WILBUR-ELLIS COMPANY

> DOES NOT MAKE OR GIVE ANY WARRANTIES (EXPRESS OR IMPLIED), GUARANTEES OR AGREEMENTS OF ANY KIND OR CHARACTER IN REFERENCE TO THE RESULTS OF ITS USE OR THE EFFECTS OF ITS USE. WILBUR-ELLIS COMPANY CANNOT AND SHALL NOT BE IN ANY WAY RESPONSIBLE FOR THE CROP OR FOR ANY INJURY OR EXPENSE RESULTING FROM THE USE OF ANY OF THESE SPRAYS QUOTED HEREIN. NO AGENT OF THIS COMPANY HAS ANY AUTHORITY TO WARRANT OR GUARANTEE ANY OF THESE SPRAYS OR TO MAKE ANY AGREEMENT WHATSOEVER IN REFERENCE THERETO.

Furthermore, on the front side, bottom center, of Wilbur-Ellis' order ticket for the four chemicals, it states: "SEE REVERSE SIDE FOR ADDITIONAL TERMS AND CONDITIONS GOVERNING SALE." The reverse side of the order ticket states in bold:

> EXCEPT AS STATED, THE GOODS COVERED BY THIS FORM ARE SOLD AS IS. SELLER MAKES NO OTHER WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE NOR ANY OTHER EXPRESSED OR IMPLIED WARRANTY EXCEPT AS STATED HEREIN.

The delivery tag that Defendant sent Plaintiff along with the four chemicals contains the following language:

> ALL WILBUR-ELLIS COMPANY ("COMPANY") PRODUCTS ARE SOLD ONLY PURSUANT TO THE TERMS OF THE COMPANY'S EXPRESS LIMITED WARRANTY AND LIMITATIONS ON REMEDIES, AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED (INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE) . . . ARE EXCLUDED AND DISCLAIMED.

The invoice Defendant sent Plaintiff for the four chemicals also includes the above disclaimer at the bottom of the front page.

A disclaimer printed in capital letters or language printed in larger or contrasting type or color satisfies the conspicuous requirement of the statute. *See Treadaway v. Damon Corp.*, No. 03-CV-73650, 2004 WL 3372010, at *3 (E.D. Mich. Sept. 20, 2004). For example, in *Parsley v. Monaco Coach Corp.*, 327 F. Supp. 2d. 797, 802 (W.D. Mich. 2004), the court held that notice

on the front in all capital letters and a disclaimer on the back with a heading "warranties and exclusion" was conspicuous.

Defendant included disclaimers on several forms, including the recommendation report, order ticket, delivery tag, and invoice. These disclaimers are in writing, conspicuous, and mention merchantability and fitness for a particular purpose; therefore, they satisfy the requirements of MICH. COMP. LAWS § 440.2316(2). The location, font, and clarity of the disclaimers make them conspicuous, as a reasonable person ought to have noticed them. MICH. COMP. LAWS § 440.1201(j).

Even if Plaintiff attempts to argue that the above disclaimers are not conspicuous, the disclaimers are effective, as Plaintiff was fully aware of and understood the disclaimers. A disclaimer of warranties may be enforced notwithstanding the lack of conspicuous language where there are "other circumstances which protect the buyer from surprise." *Lumber Mut. Ins. Co. v. Clarklift of Detroit Inc.*, 224 Mich. App. 737, 742 (Mich. Ct. App. 1997). Plaintiff has used or received at least 50 order tickets and delivery tags, at least 50 invoices, and at least 25 recommendations over the years with the exact same language. Scott, Randy, and Michael Dusseau all testified in deposition that they had read and understood the disclaimers. Scott Dusseau stated that he never objected to the language.

In Counts 1 and 2 of the Complaint, Plaintiff also alleges that Defendant breached express warranties. However, Plaintiff has shown no evidence that any express warranties were made by Defendant. Randy Dusseau testified in deposition that neither Defendant nor its representative Ryan Robinson made any warranties. He testified that the business relationship encompassed the disclaimers, which (as seen above) state that no express warranties exist. Michael Dusseau also testified that from the first day he did business with Defendant, he knew

that Defendant refused to make any warranties regarding the chemicals. Neither Michael Dusseau nor his brothers ever objected to this relationship.

There is no genuine issue of material fact regarding whether Defendant breached implied or express warranty of merchantability or fitness for a particular purpose. Defendant effectively disclaimed all implied warranties, and Plaintiff had full knowledge of the disclaimers. Plaintiff has shown no evidence of an express warranty. Therefore, summary judgment is granted to Defendant on this claim.

### 3. Contract

In Count 3 of the Complaint, Plaintiff alleges that an express contract existed between the parties, which stated that "Defendant would supply Plaintiff with a tested and proven product that met industry standards that would protect Plaintiff's pepper crop." However, Plaintiff has provided no evidence of such a contract, either written or oral. In deposition, Randy Dusseau, who had "primary sales contact" with Defendant, admitted that no express contract existed:

> Q: Did anybody ever say to you or promise you that they were supplying you with a quote, "tested and proven product?"
> A: No.
> Q: Did they ever say they were supplying you specifically with a product that met industry standards? Was that ever discussed?
> A: No.

Since there is no evidence that an express contract existed, there is no genuine issue of material fact as to whether Defendant was in breach of contract, and summary judgment is awarded to Defendant on Count 3 of the Complaint.

### 4. Negligence and Misrepresentation

Count 4 of Plaintiff's Complaint alleges "negligence and gross negligence," stating that Defendant breached "a duty [owed] to Plaintiff to provide tested and proven products, which when used as recommended by Defendant, would protect Plaintiff's pepper crop in accordance

7

with industry standards." In Count 5, Plaintiff alleges that Defendant made misrepresentations "that [it] had expertise in recommending products to be used by Plaintiff to protect their crops."

Negligence, gross negligence, and misrepresentation are tort claims. Claims are barred by the economic loss doctrine when the claims arise from a commercial transaction in goods and the plaintiff suffers only economic loss. *Neibarger v. Universal Cooperatives. Inc.*, 439 Mich. 512, 520; 486 NW2d 612, 615 (Mich. 1992). The economic loss doctrine distinguishes between "transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law" and claims "involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." *Id.* at 520-21. Furthermore, "[t]he economic loss doctrine applies in Michigan even when the plaintiff is seeking to recover for property other than the product itself." *Citizens Ins. Co. v. Osmose Wood Preserving Inc.*, 231 Mich. App. 40, 44 (Mich. Ct. App. 1998).

No claim of personal injury has been made by Plaintiff. There is also no dispute that Plaintiff and Defendant are sophisticated commercial parties engaged in an arm's length transaction. Plaintiff has been in the business of producing and growing vegetables for over twenty years, and Defendant is a commercial entity. Plaintiff purchased the chemicals for a commercial purpose (promoting the growth of the banana pepper crop, which it would then sell to a processor).

Since these claims fall under the economic loss doctrine, they fail as a matter of law and summary judgment is granted in favor of Defendant on Counts 4 and 5 of the Complaint.

5. **Fraud in the Inducement**

In Count 6, Plaintiff alleges that Defendant fraudulently induced Plaintiff to purchase products. To show fraud in the inducement, the following elements must be shown:

> (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Custom Data Solutions Inc. v. Preferred Capital Inc.*, 274 Mich. App. 239, 243; 733 N.W.2d 102 (Mich. Ct. App. 2006).

Plaintiff alleges that Defendant made the misrepresentation that it "was an expert as to the use of sprays to use in regards to Plaintiff's pepper crop." However, Plaintiff has not presented evidence to support this allegation. On the contrary, in deposition, Scott Dusseau admitted the following:

> Q:  Did Ryan [Wilbur-Ellis's representative] make any representation to you other than recommending these four chemicals to be used on your pepper crop to control the various insects and diseases that on the label they said they would control?
> A:  Nothing but the written recommendation.
> Q:  In fact, the various documents that you would get . . . they all tell you read the label. It's your only recommendation. Don't they?
> A:  Um-hum.
> Q:  Okay. As you sit here, do you have any facts or is there anything that you can think of that Ryan said or did that misled or tricked you into buying –
> A:  No.
> Q:  -- these products or entering into this agreement?
> A:  No.

Randy Dusseau also supported his brother's testimony that there was no misrepresentation:

> Q:  Is there anything specifically that Ryan said about himself that caused you to buy things from him?
> A:  No. We just went with the nature of buying chemicals that they offered a scouting service.

On the order ticket, it states that the "ONLY RECOMMENDATION" was for Plaintiff to "READ THE LABEL!" and apply the chemicals as stated on the label.

Furthermore, Plaintiff has not presented evidence that any representation Defendant made was untrue, or that Defendant knew it was not true, as is required to make a claim for fraud in the inducement.

Also, the fraud that gives rise to a claim of fraud in the inducement must be extraneous to the contract. *Huron Tool & Eng'g Co. v. Precision Consulting Servs*. Inc., 209 Mich. App. 365, 374 (Mich. Ct. App. 1995). Misrepresentations relating to the breaching party's performance of the contract do not give rise to an independent action in tort. *Id.* at 373. The alleged fraud in the instant case is not extraneous to the contract.

Fraud in the inducement further involves a misrepresentation regarding *future* conduct. *Samuel D. Begola Servs. Inc. v. Wild Bros.*, 210 Mich. App. 636, 639 (1995). In the instant case, Plaintiff only alleges that Defendant made a misrepresentation regarding then-existing circumstances (Defendant's alleged expertise). Plaintiff cannot make a claim of fraudulent misrepresentation that is not premised on a promise of future conduct.

Plaintiff has not shown evidence supporting its claim of fraud in the inducement. Plaintiff must show specific facts that there is a genuine issue for trial; mere allegations in its pleadings do not meet the burden. *Anderson*, 477 U.S. at 248. The alleged fraud also is not extraneous to the contract, and did not involve a misrepresentation regarding future conduct. For these reasons, summary judgment is granted on Count 6.

### 6. Michigan Consumer Protection Act

In Count 7, Plaintiff claims that Defendant violated the Michigan Consumer Protection Act (MCPA). This act states that "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful." MICH. COMP. LAWS § 445.903 (2010). However, the MCPA does not supply protection "if an item is purchased primarily for

business or commercial rather than personal purposes." *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 273; 600 N.W.2d 384 (Mich. Ct. App. 1999). In *Zine*, for example, the court held that the MCPA did not apply where the plaintiff's purchase of a truck was primarily for business purposes. *Id.* at 275.

It is undisputed that Plaintiff's claim arises out of the purchase of goods primarily used for a business or commercial purpose. Plaintiff is a commercial farming operation, and bought the chemicals to promote the growth of the banana pepper crop. Plaintiff sold most of these peppers to a processor that, in turn, packaged the peppers to be used in restaurants. Therefore, Plaintiff's claim is outside the scope of the MCPA, and Count 7 is dismissed.

### IV.  CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [#24] is GRANTED.

SO ORDERED.


Dated:  July 29, 2013

S/Gershwin A. Drain<br>
GERSHWIN A. DRAIN<br>
UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 29, 2013, by electronic and/or ordinary mail.

S/Tanya Bankston
Deputy Clerk